IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MICHAEL W. JORGENSEN,
     Plaintiff,

v.                     Case No. 3:11cv283/LAC/CJK

MICHAEL J. ASTRUE,
Commissioner of Social Security,
     Defendant.

_____

## REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b), and NORTHERN DISTRICT OF FLORIDA LOCAL RULES 72.1(A), 72.2(D), and 72.3, relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. §§ 401-1400v.  The case is now before the court pursuant to 42 U.S.C. § 405(g), for review of a final determination of the Commissioner of Social Security ("Commissioner") denying claimant's application for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401-34.

Upon review of the record before this court, I conclude that the findings of fact and determinations of the Commissioner are supported by substantial evidence.  The decision of the Commissioner, therefore, should be affirmed, and the application for benefits denied.

## PROCEDURAL HISTORY

Claimant, Michael W. Jorgensen (who will be referred to by name, as plaintiff, or as claimant), filed his application for Social Security disability benefits on June 16, 2009, and it was denied initially and on reconsideration.  T. 68-70, 74-75.[1]  After a hearing before an Administrative Law Judge ("ALJ"), at which claimant was represented by counsel, the ALJ issued an unfavorable decision.  T. 8-26.  The Appeals Council of the Social Security Administration denied a request for review, T. 1-4, rendering the ALJ's decision the final decision of the Commissioner for purposes of this review.

## FINDINGS OF THE ALJ

In the written decision the ALJ made a number of findings relative to the issues raised in this appeal:

1.  The claimant meets the insured status requirements of the Act through December 31, 2013.

2.  The claimant has not engaged in substantial gainful employment since May 31, 2009, the alleged onset date of disability.

3.  The claimant has the following severe impairments:  degenerative disc disease, status post cervical spine fusion, substance induced mood disorder, gastroesophageal reflux disease, hypertension, fatty liver, tinnitus, and status post torn meniscus of the left knee.

---

[1] The administrative record, as filed by the Commissioner, consists of ten volumes (docs. 5-2 through 5-11), and has 645 consecutively numbered pages.  References to the record will be by "T." for transcript, followed by the page number.

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.  The claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except the claimant can perform occasional pushing and pulling with arms and legs without overhead reaching; no climbing ropes, ladders, or scaffolds; occasional kneeling, crouching, or crawling; must avoid work that requires frequent side to side movement with the neck and head.  Due to pain and psychological factors, claimant has a moderate degree of impairment in concentration, persistence, and pace and should not perform jobs with production rate or pace.

6.  The claimant is unable to perform his past relevant work.

7.  The claimant was forty-two years old on the alleged onset date of his disability.

8.  The claimant has at least a high school education and is able to communicate in English.

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform.  T. 13-22.

<u>STANDARD OF REVIEW</u>

A federal court reviews a Social Security disability case to determine whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied by the ALJ.  *See Lewis v. Callahan*, 125 F.3d

1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). With reference to other standards of review, the Eleventh Circuit has said, "'Substantial evidence is more than a scintilla . . . .'" *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 62 (11th Cir. 2010) (quoting *Lewis*, 125 F.3d at1439). Although the ALJ's decision need not be supported by a preponderance of the evidence, "it cannot stand with a 'mere scintilla' of support." *Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986). The reviewing court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Secretary[.]'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Nevertheless, a reviewing court may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). In sum, review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record."[2]

---

[2] The Eleventh Circuit speaks not only of independent review of the administrative record, but reminds us it conducts *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253,

*Flynn v. Heckler*, 768 F.2d. 1273, 1273 (11th Cir. 1985); *see also Getty ex rel. Shea v. Astrue*, No. 2:10–cv–725–FtM–29SPC, 2011 WL 4836220 (M.D. Fla. Oct. 12, 2011); *Salisbury v. Astrue*, No. 8:09-cv-2334-T-17TGW, 2011 WL 861785 (M.D. Fla. Feb. 28, 2011).  The recitation of medical and historical facts of this case, as set out below, is based upon my independent review.

The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(g), the Commissioner analyzes a disability claim in five steps:

1.  If the claimant is performing substantial gainful activity, he is not disabled.

2.  If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3.  If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of

---

1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.  If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.

5.  Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

Claimant bears the burden of establishing a severe impairment that keeps him from performing his past work.  *See* 20 C.F.R. § 404.1512.  The Eleventh Circuit has explained the operation of step five.  *See Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001) ("In practice, the burden temporarily shifts at step five to the Commissioner.  The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists.  The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.  *See Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987) ('The shifting of the burden of proof is not statutory, but is a long-standing judicial gloss on the Social Security Act')).").

Step five (or step four in cases where the ALJ decides a claimant can perform his past work) is where the rubber meets the road.  At that point, the ALJ formulates the all-important residual functional capacity.  Even where one or more severe impairments are established, the claimant must show that he cannot perform work within that residual functional capacity.  The ALJ establishes residual functional capacity, utilizing the impairments identified at step two, by interpretation of (1) the medical evidence, and (2) the claimant's subjective complaints (generally complaints of pain).  Residual functional capacity is then used by the ALJ to make the ultimate vocational determination required by step five.[3]  "[R]esidual functional capacity is the most [claimant] can still do despite [claimant's] limitations."[4]   20 C.F.R. §

---

[3] "Before we go from step three to step four, we assess your residual functional capacity. (See paragraph (e) of this section.)  We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."  20 C.F.R. § 404.1520(a)(4).

[4] In addition to this rather terse definition of residual functional capacity, the Regulations describe how the Commissioner makes the assessment:

> (3) Evidence we use to assess your residual functional capacity.  We will assess your residual functional capacity based on all of the relevant medical and other evidence. In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity.  (See § 404.1512(c).)  However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources.  (See §§ 404.1512(d) through (f).) We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations. (See § 404.1513.)  We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other

404.1545(1).  Often both the medical evidence and the accuracy of a claimant's subjective complaints are subject to a degree of conflict, and that conflict leads, as in this case, to the points raised on judicial review by many disappointed claimants.

## FACT BACKGROUND AND MEDICAL HISTORY[5]

Plaintiff was born in October 1966, and reported a high school education with additional training in jet engine mechanics.  T. 31-32, 116, 155.  He alleged disability beginning May 31, 2009, due to major depression, ruptured discs, and degenerative disc disease.  T. 116.  Plaintiff noted on his Disability Report that these medical conditions caused left arm numbness with certain movements, reduced use of the right arm, lost movement in both shoulders and neck, intolerable back pain with prolonged sitting or standing, and difficulty gripping things due to arthritis in both hands.  T. 150.  Mr. Jorgensen was a member of the United States Navy from May 15, 1989, until his retirement in 2009.  He reported past work experience as a jet engine mechanic for the Navy.  T. 32, 150-51.  He stated that his job changed to quality control and desk job duties following cervical fusion surgery in September 2004.  T. 34-35, 42, 150.  He actually stopped working on February 2, 2009, when he left the military on terminal leave.  T. 150.  Plaintiff's official retirement date was May 31,

---

persons.  (See paragraph (e) of this section and § 404.1529.)[.]

20 C.F.R. § 404.1545(a)(3).

[5] Although intended to be thorough, and to provide an overview of claimant's history of care and treatment, the synopsis of medical evidence will be supplemented as called for in the Analysis section.

2009.  T. 33.  Upon retirement, plaintiff made the present application for Social Security disability, and assigned his retirement date, May 31, 2009, as the date of onset.  T. 150.

In his memorandum, plaintiff sets out his cervical spine problems and related issues with his arm as the major relevant impairments.  Because the issue raised by plaintiff involves the ALJ's treatment of his complaints of pain related to the neck and arm, the following summary of the medical evidence will deal largely with those maladies.  I have not overlooked the ALJ's thorough treatment of other severe impairments, T. 13-17, but do not devote as much attention to those here, because they do not enter into the argument raised by plaintiff.

Mr. Jorgensen's cervical spine problems are significant.  The Navy medical chart reveals he underwent a C5-6 fusion with diskectomy and bone graft in 2004.[6] T. 467.  He has continued to complain of  neck pain on the right and left, with numbness.  T. 304.  He also has numbness in his arm with radicular pain.  T. 304. Claimant also has narrowing of the C4-5 intervertebral disc, degenerative arthritic changes at C6-7, and some spondylosis at the C6-7 level.  T. 455, 463, 465.

The medical evidence includes a fairly extensive record of diagnosis and treatment from the VA Medical Center during the summer of 2009.  T. 515-90.  These records, summarized by the ALJ at T. 16-20, document lumbar, or low back issues, as well as the cervical spine findings.  Diagnostic X-rays from the VA show

---

[6] Some of the medicals appear to identify the surgical site as C4-5.  *E.g.*, T. 304. Contemporaneous radiology reports confirm the site as C5-6.  T. 463.

degenerative disc disease at L4-S1.  T. 583.  Plaintiff was referred for a physical therapy consult, which he underwent on August 11, 2009.  T. 558.

At the assessment, claimant related his cervical fusion and also a history of chronic back pain.  He reported he has almost lost use of his left arm, despite the surgery.  T. 559.  He also indicated his right leg goes numb when he sits.  He described an overall pain level of 4/10.  T. 559.  The evaluation showed arm and leg weakness, with sensory changes on the right arm.  T. 560.  According to the therapist, plaintiff was unable to turn his head from side to side completely.  Such a maneuver produced pain radiating down the arm.  Plaintiff had a positive Spurling test for pain radiating from the neck to the arm.  T. 559.  Right arm strength was 3+/5.  Dermatome testing, performed with a blunt object, produced fifty percent from the C4 nerves, ninety percent from C5, normal from C6, fifty percent from C7, and fifty percent from C8.  T. 559.  The patient complained of "shooting pain on slump test."  T. 559.  The therapist assessed rehabilitation potential as "fair" and did not believe Mr. Jorgensen would benefit from physical therapy.  T. 560.

On August 27, 2009, plaintiff presented to the emergency department at Pensacola Naval Hospital with severe neck pain.  T. 508.  In his testimony, plaintiff attributed this to an attempt to do yard work with a weed eater.  T. 46.  Dr. Michael Kasabian's note of September 21, 2009, relates neck tenderness, lumbar tenderness brought on by range of motion testing, as well as muscle spasm in the C6-7 area.  T. 510.  Dr. Kasabian's impression was neck and low back pain.  T. 510.

On March 24, 2010, claimant had an MRI of his cervical spine.  The study had been ordered based upon continued radiculopathy.  T. 641.  The radiologist found the old C5-6 fusion.  Other findings included degenerative disease at C4-5 with right foraminal focal disc protrusion resulting in "severe narrowing of the right neuroforamen," degenerative disc disease at C6-7, resulting in mild bilateral neural foraminal narrowing," and "signal abnormality" within the C4 vertebral body, likely representing arthritic changes from degenerative disc disease.  T. 641-42.  The radiologist believed that abnormality follow-up was needed.  T. 642.

At the hearing, Mr. Jorgensen noted his daily activities.  He would help get the children off to school and then lie down for a couple of hours.  T. 47.  He can do chores for a few minutes before he needs to rest.  He described his typical activity as, "I get up, walk around, go get something to drink, go out and check on the dogs, but I mean, as far as physical activity, that's it."  T. 47.  The vocational expert, Mr. Miller, believed that, if Mr. Jorgensen were being truthful about his limitations concerning sitting, standing, walking, and lifting, he would not be employable.  T. 64.

Commenting upon plaintiff's reports of pain and limitation, the ALJ decided these complaints are supported by the medical evidence "to a certain degree."  T. 20.  Nevertheless, the ALJ found "little evidence that the claimant has sought medical treatment for debilitating pain," nor "evidence that the claimant has been referred to pain management for any of his impairments."  T. 20.  The ALJ then made specific reference to claimant's activities:

The claimant also participates in a wide array of activities of daily living in spite of his combined impairments and the pain they produce. The claimant reported that he enjoys going to the beach and fishing, and he testified that he helps care for his children. The claimant stated that he helps with the cooking, gets his young son ready for school, and accompanies his wife on the shopping trips. The claimant also testified that he attends his son's t-ball practice twice a week and t-ball games twice a week. I also found it very interesting that the claimant mentioned that when he returns to bed after sending the children to school, his wife will get him up by implying that he is sleeping the day away. Perhaps the claimant was attempting to provide some humor, but I find it telling that the claimant's wife does not seem to believe that the claimant needed to lie down due to pain. The claimant also testified that he does some light housekeeping because his wife will be upset if he doesn't help. This again seems to imply that the claimant's wife finds him capable of performing the chores.

T. 20.

The ALJ assigned great weight to a consultative report from Dr. Clarence Louis. T. 20, 609-16. The ALJ declined to elaborate further on the actual findings described by Dr. Louis, but used the doctor's Residual Functional Capacity Assessment in formulating claimant's limitations. T. 21. Concerning claimant's symptoms, Dr. Louis, on January 5, 2010, said:

> The functional statements made by the claimant on the 1/4/10 ROC are attributable to the MDI neural foraminal stenosis of the C-spine. However, when these statements are weighed against the overall objective evidence in the folder, I find some statements to be reasonable and others to be disproportionate. Therefore, only *partial credibility* has

been assigned.[7]  It would not be reasonable for the claimant to state that he cannot function at the level cited in the RFC.

T. 614 (emphasis in original).

A few months before the Dr. Louis consult, on October 6, 2009, Dr. John F. Duffy did a psychological evaluation for the Division of Disability Determination. Among other observations, Dr. Duffy made the following comments:  "He is very cordial and did not appear to be exaggerating any symptoms and impresses me as reliable for the purpose of the evaluation."  T. 591.  "He is highly conscientious and pushes himself to try and be productive."[8]  T. 593.

## ANALYSIS

Plaintiff argues that the ALJ failed to properly evaluate his subjective complaints of neck and arm pain.  Under controlling law, pain is treated, for purposes

---

[7] Dr. Louis' report is not particularly fleshed out by other items in the record, by the ALJ, or by the parties I do note, however, that a Psychiatric Review Technique, performed the same day by consultant Judith LaMarche, Ph.D., contains the following:

> Credibility is ascertained by considering functional statements which are reasonable and attributable to MDI.  When functional statements are weighed against the overall objective and subjective evidence in the file, some statements are reasonable while others are disproportionate.  Greater weight has been given to objective data than to subjective reporting of symptoms.  Therefore, only partial credibility is assigned.

T. 629.  The similarity in the actual words used in the credibility evaluations (and apparently the impressions made on both examiners) by Drs. Louis and LeMarche is inescapable.

[8] Although I note Dr. Duffy's observation for the sake of completeness, plaintiff has not referred to it in his argument.

of the disability analysis, as a symptom of disability.  Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, unless "medical signs and laboratory findings . . . show . . . a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged . . . ."  *Accord* 20 C.F.R. § 416.929.  The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[9] test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing:  (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson*, 284 F.3d at 1225 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Adamo v. Comm'r of Soc. Sec.*, 365 F. App'x 209, 214 (11th Cir. 2010) (quoting *Wilson*, 284 F.3d at 1225); *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991).

"While both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself."  *Elam*, 921 F.2d at 1215.  The Eleventh Circuit has held that "pain alone can be disabling, even when its existence

---

[9] *Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir. 1986) (the case originally adopting the three-part pain standard).

is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F. Supp. 2d 1245, 1259 (M.D. Fla. 2005). The presence or absence of evidence to support symptoms of the severity claimed, though, remains a factor that can be considered. *See Marbury*, 957 F.2d at 839-40; *Tieniber*, 720 F.2d at 1253.

If the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain, he must do so explicitly and give reasons for that decision. *See MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986). Where he fails to do so, the Eleventh Circuit has stated that it would hold as a matter of law that the testimony is accepted as true. *See Holt*, 921 F.2d at 1223; *MacGregor*, 786 F.2d at 1054. Although the Eleventh Circuit does not require an explicit finding as to a claimant's credibility, the implication must be obvious to the reviewing court. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). "The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." *Id.* (internal quotations and citations omitted). And of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. *See Wilson*, 284 F.3d at 1225-26; *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991); *Hurley*, 385 F. Supp. 2d at 1259.

Underlying the *Hand* standard, as suggested above, is the need for a credibility determination concerning a plaintiff's complaints of pain. Those complaints are, after all, subjective. "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[10]  People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain. This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ." *Hand v. Heckler*, 761 F.2d 1545, 1548-49 (11th Cir. 1985). It is within the ALJ's "realm of judging" to determine whether "the quantum of pain [a claimant] allege[s] [is] credible when considered in the light of other evidence." *See Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984). Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that. The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for

---

[10] Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

the ALJ's credibility determination.   Again, in evaluating these questions, I have conducted an independent review of the record.

Here, the ALJ made a number of comments bearing upon her analysis of claimant's credibility with regard to the complaints of debilitating pain.   Among these observations are the following:

> The objective medical evidence supports the fact that the claimant's neck impairment could reasonably be expected to produce the claimant's pain and limited range of motion.   However, in evaluating the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning, I find the claimant to be only partially credible.   The claimant alleges that his pain and limitations are so severe that he is unable to perform work at any exertion level.   The medical evidence shows that he reported his pain as 3 and 4 on a scale from 1-10, at two different occasions during the period of adjudication.   Furthermore, the claimant has not consistently sought treatment for any of his impairments during the period of adjudication.   I acknowledge that he had a onetime exacerbation of his pain that led him to seek emergency care.   Based on the claimant's own testimony, this followed a specific physical activity that the claimant no longer performs.

> The claimant alleges that he became disabled on May 31, 2009, which is actually the date that his work status changed from terminal leave to retired.   There is no medical evidence that the claimant's condition deteriorated to the point that he was no longer able to work.   As a matter of fact, the claimant reported that he had been re-assigned to maintenance control due to his neck impairment in 2004 and that he had no limitations in that capacity.   It appears that the claimant successfully performed that job for five years.   The claimant also testified that he was unable to perform the type of work that he was

trained to do as a jet mechanic.  While this statement is certainly credible in light of the exertional requirements of a jet mechanic, it does not mean that the claimant is unable to perform all work.  The claimant seems to have felt the same way, as there is evidence that he has looked for work since his alleged onset date, collected unemployment benefits with the intention of returning to work, and made statements that he was planning on pursuing vocational rehabilitation.  In light of the claimant's neck impairment, I have reduced his residual functional capacity from very heavy to sedentary.

The claimant has also made allegations regarding back pain and knee pain that are supported by the medical evidence to a certain degree.  While there is evidence of degenerative disc disease of the lumbar spine and a past torn meniscus, there is little evidence that the claimant has sought medical treatment for debilitating pain.  There is no evidence that the claimant has been referred to pain management for any of his impairments.  The claimant also participates in a wide array of activities of daily living in spite of his combined impairments and the pain they produce.  The claimant reported that he enjoys going to the beach and fishing, and he testified that he helps care for his children.  The claimant stated that he helps with the cooking, gets his young son ready for school, and accompanies his wife on the shopping trips.  The claimant also testified that he attends his son's t-ball practice twice a week and t-ball games twice a week.  I also found it very interesting that the claimant mentioned that when he returns to bed after sending the children to school, his wife will get him up by implying that he is sleeping the day away.  Perhaps the claimant was attempting to provide some humor, but I find it telling that the claimant's wife does not seem to believe that the claimant needed to lie down due to pain.  The claimant also testified that he does some light housekeeping because his wife will be upset if he doesn't help.  This again seems to imply that the claimant's wife finds him capable of performing the chores.

T. 19-20.

The ALJ certainly did not find Mr. Jorgensen's cervical problems to be insignificant, and they are not. Nevertheless, under the substantial evidence standard, one may not conclude that the ALJ's conclusions, which she factored into her formulation of residual functional capacity, are not supported by the evidence of record. Indeed, plaintiff does not really take issue with the findings I have quoted above. Instead, he argues that he met the pain standard as a matter of law. (Doc. 9, 8-9) This is, respectfully, not a supportable argument. The ALJ did not reject completely plaintiff's reports of pain. As the Commissioner states, citing *Clark v. Chater*, 75 F. 3d 414 (8th Cir. 1996), "[t]he question is not whether plaintiff has some pain and limitation. Instead, the question is whether plaintiff is credible to the extent that it prevents him from performing substantial gainful activity." (Doc. 10, 5-6) In making the critical determinations regarding credibility concerning subjective complaints of pain, the ALJ may consider activities of daily living. *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. § 404.1529(c)(3). Conceding that reasonable people might interpret evidence such as presents itself in this case in different ways, I cannot say that the conclusions reached by the ALJ here are not supported by substantial evidence. Although not determinative to my analysis, I also note the obvious—plaintiff, then forty-two years old, sought these

disability benefits effective upon the very date of his retirement from a twenty-year career in the Navy.[11]

Based upon the foregoing analysis, the decision is in compliance with appropriate legal standards.  *See Carnes*, 936 F.2d at 1218 ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").  It is therefore respectfully RECOMMENDED:

The application for a period of disability and disability benefits be DENIED and the Commissioner's decision be AFFIRMED.

At Pensacola, Florida, this 30th day of March, 2012.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[11] The ALJ performed an analysis of the Veteran's Administration disability award.  T. 19, I have not devoted attention to that, however, because claimant has not raised it as a matter for the court's consideration.  I do find that the Commissioner's recitation of the law with regard to a disability finding of another agency is substantially correct.  (Doc. 10, 9)

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).